## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between Client First Settlement Funding, LLC ("Client First" or "the Company"), on the one hand, and Allen Mogavero (the "Plaintiff"), on the other hand.

WHEREAS:

A.      The Plaintiff previously was employed by Client First;

B.      On or about August 1, 2016, Plaintiff filed a lawsuit against the Company and Burt Kroner (sometimes collectively referred to as "Defendants") in the United States District Court, Southern District of Florida, styled Allen Mogavero et al. v. Client First Settlement Funding, LLC, et al., Case No. 9:16-cv-81362-WPD (the "District Court Action");

C.      The Plaintiff claimed that he was entitled to but did not receive from Defendants certain compensation allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended ("the FLSA") (the "Alleged Compensation Amount");

D.      On or about October 4, 2016, the District Court entered its Order compelling arbitration and staying the proceedings in the Civil Action;

E.      On or about October 19, 2016, Plaintiff caused to be filed his demand for arbitration with the American Arbitration Association (the "Arbitration");

F.      On or about January 5, 2017, the Defendants caused to be filed their answer and affirmative defenses, denying each and every material allegation set forth in the District Court Action and Arbitration, and further denying having committed any wrong or causing any injury to the Plaintiff;

G.      For approximately one (1) year, the parties litigated the Plaintiff's claims in the Arbitration, including participating in discovery, consisting of written discovery and depositions;

H.      At all times material hereto, the Defendants vehemently disputed and denied all the Plaintiff's claims in the Civil Action and Arbitration and denied that the Plaintiff was entitled to receive the Alleged Compensation Amount or any part thereof;

I.      The final hearing in the Arbitration was scheduled to take place during the week of January 22, 2018;

J.      Because Plaintiff has concerns about whether he could prevail at the final hearing, Plaintiff has determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing and is accepting the amount offered herein in order

AM 𝒜𝓜

COMPOSITE EXHIBIT "B"

to avoid a potential adverse result and cost judgment;

K.     Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever;

L.     Therefore, in order to avoid the further costs and burdens of trial, Defendants and Plaintiff now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action and Arbitration.

NOW, THEREFORE, Defendants and Plaintiff agree as follows:

1.     The foregoing recitals constitute part of this Agreement.

2.     In consideration of this Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid to the Plaintiff and his attorneys, Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney"), the total gross amount of Two Thousand Seven Hundred and Fifty Dollars and No Cents ($2,750.00) (the "Settlement Amount").  Plaintiff shall receive the total gross amount of $1,000.00, for Plaintiff's alleged unpaid wages and liquidated damages, and Plaintiff's attorney shall receive the total gross and net amount of $1,750.00 (for attorney's fees and costs and additional consideration for this Agreement).

(a)     Within ten (10) days of the District Court's entry of an Order confirming the Arbitration, and conditioned upon the approval of this Agreement and dismissal of the District Court Action with prejudice, the Defendants shall cause to be delivered to Plaintiff's counsel's office:

(i)     a payroll style check made payable to Plaintiff in the gross sum of $500.00, less applicable deductions and withholdings;

(ii)     a non-payroll style check made payable to Plaintiff in the gross and net sum of $500.00; and

(iii)     a non-payroll style check made payable to Cassata Law, P.A., in the gross and net sum of $1,750.00, with no deductions or withholdings.

The payment set forth in Paragraph 2(a)(i) above will be reported by the Company for tax purposes on Form W-2 to be issued by the Company to Plaintiff and Plaintiff agrees and understands that all applicable taxes shall be withheld from that payment.  The payment set forth in Paragraph 2(a)(ii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff and the Plaintiff agrees and understands that no taxes shall be withheld from these payments.  The payment set forth in Paragraph 2(a)(iii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff's attorney (Plaintiff's attorney's tax ID number 27-1452649), and the Plaintiff and Plaintiff's attorney agree and understand that no taxes shall be withheld from these

AM _____

COMPOSITE EXHIBIT "B"

payments. The Plaintiff further represents, warrants, and acknowledges that the payment to Plaintiff's attorney set forth in Paragraph 2(a)(iii) above is entirely at his instigation and request both as to fact and amount, and for his convenience, and that the Company is not in any manner whatsoever involved in his request that such payments be so directed. The Plaintiff agrees and acknowledges that, between them, as allocated pursuant to applicable law, he will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and represents and warrants that such taxes will be timely and fully paid.

Neither the Company nor Plaintiff make any representations as to the taxability of the amounts paid by the Company to the Plaintiff. The Plaintiff agrees to pay the employee, but not the employer, federal or state taxes, if any, which are required by law to be paid with respect to the Settlement Amounts. Moreover, the Plaintiff agrees to indemnify the Company and hold it harmless from any interest, taxes or penalties assessed against them by any governmental agency as a result of the non-payment of employee, but not employer, taxes on any amounts paid to the Plaintiff or Plaintiff's attorney under the terms of this Agreement.

3.      Together with this Agreement, the attorneys for the Plaintiff – Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney") – will execute a Joint Motion to Review and Approve FLSA Settlement (the "Joint Motion") in the form attached hereto as Exhibit "A" with respect to the Arbitration, and forward it to the Defendants' attorneys as set forth in Paragraph 24(a) below. The Plaintiff and Defendants hereby authorize and instruct their respective attorneys to transmit the executed Joint Motion to the Arbitrator. The parties agree subsequently to take whatever other actions are necessary to effectuate the dismissal with prejudice of the District Court Action, including, but not limited to, filing a motion to confirm the Arbitrator's approval of this Agreement, as well as filing additional motions in the District Court Action should the Arbitrator disapprove or deny the Joint Motion attached hereto as Exhibit "A."

4.      The Plaintiff agrees and acknowledges that he shall not in the future provide any services to, or be employed by, the Company. The Plaintiff further agrees and acknowledges that he will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. In the event that the Plaintiff is inadvertently employed by any of the foregoing (including as an independent contractor), he will promptly notify the employing person or entity of his obligation to resign from such employment, and the employing entity shall have the right to require his resignation forthwith.

5.      The Plaintiff represents, warrants, and acknowledges that the Company does not owe him any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as specifically set forth in this Agreement. The Plaintiff further agrees and understands that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of

AM /M/

COMPOSITE EXHIBIT "B"

settlement and that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

6.      The Plaintiff represents, warrants, and acknowledges that there are bona fide disputes between himself and the Company as to whether he is entitled to receive the Alleged Compensation Amount or any part thereof.  Notwithstanding that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof, the Plaintiff represents, warrants, and agrees that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts, including but not limited to alleged unpaid wages, alleged liquidated damages, alleged back wages, alleged compensatory damages, and costs and attorney's fees, to which the Plaintiff claims or may claim entitlement as against the Company, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.      The Plaintiff, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby releases and forever discharges the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and Burt Kroner, and his respective heirs, executors, administrators, successors, and assigns, and all persons acting by, through, under, or in concert with any of them (hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

(a)      any and all claims asserted, or which could have been asserted, in the District Court Action and/or Arbitration, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

(b)      any and all claims of wrongful termination or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all other claims of employment discrimination on any basis, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992, Fla. Stat. Chapter 760, as amended; the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil

AM 

COMPOSITE EXHIBIT "B"

Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under 42 U.S.C. § 1981, under the Florida Equal Pay Law, as amended, Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07, the Florida Whistle Blower Act, Fla. Stat. § 448.101 et seq.; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; Florida Wage Discrimination Law, Fla. Stat. § 448.07; Florida AIDS Act, Fla. Stat. § 110.1125, § 381.00 and § 760.50; Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. § 448.075 et seq.; Florida OSHA, Fla. Stat. Ann. § 442.018(2); and under the Florida Wage Discrimination Law, as amended;

(c)     any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law;

(d)     any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)     any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against the Defendant Releasees, Plaintiff or his heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this Agreement.

Plaintiff agrees, acknowledges and confirms that he has not worked any additional hours for which he is eligible to receive any additional compensation not otherwise paid to him previously or pursuant to this Agreement.

Plaintiff agrees, acknowledges and confirms that he knows of no injuries suffered on the job for which he may have been eligible to make a claim for workers' compensation benefits and for which he has not previously submitted claims.

Plaintiff agrees, acknowledges and confirms that he knows of no conduct, or misconduct, on the part of the Company or any of its employees, which could or should have been reported to appropriate governmental agencies or otherwise.

This release does not include any and all claims which arise or may arise subsequent to the execution of this Agreement.

8.     The Plaintiff understands and acknowledges that there may be facts or information which he does not know or suspect to exist in his favor at the time he executes this Agreement, and he agrees that this Agreement is intended to and does extinguish any and all claims he might have based on such facts or information.

AM

COMPOSITE EXHIBIT "B"

9.      Excepting only the District Court Action and the Arbitration, the Plaintiff represents and warrants that he has never commenced or filed, and covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before his execution of this Agreement.

10.      The Plaintiff represents and warrants that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against him by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before his execution of this Agreement. The Plaintiff further represents and warrants that he has not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, he will cooperate fully with the Defendant Releasees and will move immediately to withdraw his name and to disassociate himself completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.      The parties acknowledge that maintaining their respective good reputation in the community is of paramount importance.  Accordingly, the parties represent and warrant that they will not disparage or encourage or induce others to disparage one another, including any of the Defendant Releasees, by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise.  These proscriptions include, but are not necessarily limited to, communications that are in any way injurious to the reputation and interests of the Plaintiff or the Company or any of the Defendant Releasees, such as, without limitation, any negative or derogatory comments.

12.      Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraph 11 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Plaintiff, receipt whereof is hereby acknowledged, releases and forever discharges the Plaintiff and his respective heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the

AM

COMPOSITE EXHIBIT "B"

Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, which, against the Plaintiff, the Company or the Company's successors and assigns ever had, now have or hereafter can, will, or may have, by reason of any matter or cause whatsoever, from the beginning of the world to the date the Company executes this Agreement.

13.     No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

14.     In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

15.     This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida, without regard to choice of law principles. Any action or proceeding relating to or arising out of this Agreement shall solely and exclusively be brought in the District Court or a state court of competent jurisdiction and venue shall solely and exclusively be in Palm Beach County, Florida.

16.     Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

17.     This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

18.     This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiff or any other person on the part of the Company or any of the other Defendant Releasees.   Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever.

Claimants have determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing.  Because Claimants have concerns about whether they could prevail at the final hearing, they are accepting the amount offered herein in order to avoid a potential adverse result and cost judgment.

AM

COMPOSITE EXHIBIT "B"

19.     The Plaintiff expressly represents, warrants, and acknowledges that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, he does not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20.     The Plaintiff represents and acknowledges that his signature hereon shows that he has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that his signature appearing hereon is genuine.

21.     Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that this Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce any applicable laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies.  Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that he may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that:

(a)     Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein, agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA;

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed;

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies.  Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to his execution of this Agreement) that he may have

AM 

COMPOSITE EXHIBIT "B"

against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge;

(d)      This Agreement will not affect or be used to interfere with Plaintiff's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth herein;

(e)      For a period of seven (7) days following Plaintiff's execution of this Agreement, Plaintiff has the right to revoke this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 24(a) below;

(f)      Plaintiff and the Company further agree and acknowledge that this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff; and that in the event Plaintiff revokes this Agreement prior to said eighth (8th) day, this Agreement, and the promises contained in it, will automatically be deemed null and void;

(g)      Plaintiff's acceptance of the monies or other consideration paid by the Company at any time more than seven (7) days after Plaintiff has executed this Agreement, will constitute an admission by Plaintiff that he has not revoked this Agreement during the revocation period, and that this Agreement has become fully effective and enforceable;

(h)      The Company hereby advises and urges the Plaintiff in writing to consult with an attorney prior to executing this Agreement; and

(i)      Plaintiff represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Plaintiff's right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

22.      This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart. The parties agree and acknowledge that a photocopy, facsimile copy or scanned email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

23.      This Agreement shall not be admissible or discoverable in any court or

AM _____

COMPOSITE EXHIBIT "B"

administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

    24.    Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

    (a)    If to the Company:

    Daniel R. Levine, Esq.
    Padula Bennardo Levine LLP
    3837 NW Boca Raton Blvd., Suite 200
    Boca Raton, Florida 33431
    Telephone: (561) 544-8900
    Facsimile: (561) 544-8999
    E-Mail:    drl@pbl-law.com

    (b)    If to the Plaintiff:

    Dion Cassata, Esq.
    Cassata Law, P.A.
    Boca Crown Centre
    7999 North Federal Highway, Suite 200
    Boca Raton, Florida 33487
    Telephone: (954) 364-7803
    E-Mail:    dion@cassatalaw.com

    25.    **THE PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT HE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HIM; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HIS ATTORNEYS, DION CASSATA, ESQ., CASSATA LAW, P.A., AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HIS ATTORNEYS.**

[SIGNATURES APPEAR ON FOLLOWING PAGE]

AM

COMPOSITE EXHIBIT "B"

CLIENT FIRST SETTLEMENT FUNDING, LLC

By: _____

BURT KRONER, MEMBER

Dated: _____

2/20/2018

ALLEN MOGAVERO

_____

ALLEN MOGAVERO

Dated:   1-26-18

AM

COMPOSITE EXHIBIT "B"

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between Client First Settlement Funding, LLC ("Client First" or "the Company"), on the one hand, and Marc Cohen (the "Plaintiff"), on the other hand.

WHEREAS:

A.    The Plaintiff previously was employed by Client First;

B.    On or about August 1, 2016, Plaintiff filed a lawsuit against the Company and Burt Kroner (sometimes collectively referred to as "Defendants") in the United States District Court, Southern District of Florida, styled *Allen Mogavero et al. v. Client First Settlement Funding, LLC, et al.*, Case No. 9:16-cv-81362-WPD (the "District Court Action");

C.    The Plaintiff claimed that he was entitled to but did not receive from Defendants certain compensation allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended ("the FLSA") (the "Alleged Compensation Amount");

D.    On or about October 4, 2016, the District Court entered its Order compelling arbitration and staying the proceedings in the Civil Action;

E.    On or about October 19, 2016, Plaintiff caused to be filed his demand for arbitration with the American Arbitration Association (the "Arbitration");

F.    On or about January 5, 2017, the Defendants caused to be filed their answer and affirmative defenses, denying each and every material allegation set forth in the District Court Action and Arbitration, and further denying having committed any wrong or causing any injury to the Plaintiff;

G.    For approximately one (1) year, the parties litigated the Plaintiff's claims in the Arbitration, including participating in discovery, consisting of written discovery and depositions;

H.    At all times material hereto, the Defendants vehemently disputed and denied all the Plaintiff's claims in the Civil Action and Arbitration and denied that the Plaintiff was entitled to receive the Alleged Compensation Amount or any part thereof;

I.    The final hearing in the Arbitration was scheduled to take place during the week of January 22, 2018;

J.    Because Plaintiff has concerns about whether he could prevail at the final hearing, Plaintiff has determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing and is accepting the amount offered herein in order

MC

COMPOSITE EXHIBIT "B"

to avoid a potential adverse result and cost judgment;

K.      Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever;

L.      Therefore, in order to avoid the further costs and burdens of trial, Defendants and Plaintiff now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action and Arbitration.

NOW, THEREFORE, Defendants and Plaintiff agree as follows:

1.      The foregoing recitals constitute part of this Agreement.

2.      In consideration of this Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid to the Plaintiff and his attorneys, Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney"), the total gross amount of Two Thousand Two Hundred and Fifty Dollars and No Cents ($2,250.00) (the "Settlement Amount").  Plaintiff shall receive the total gross amount of $500.00, for Plaintiff's alleged unpaid wages and liquidated damages, and Plaintiff's attorney shall receive the total gross and net amount of $1,750.00 (for attorney's fees and costs and additional consideration for this Agreement).

(a)     Within ten (10) days of the District Court's entry of an Order confirming the Arbitration, and conditioned upon the approval of this Agreement and dismissal of the District Court Action with prejudice, the Defendants shall cause to be delivered to Plaintiff's counsel's office:

(i)      a payroll style check made payable to Plaintiff in the gross sum of $250.00, less applicable deductions and withholdings;

(ii)     a non-payroll style check made payable to Plaintiff in the gross and net sum of $250.00; and

(iii)    a non-payroll style check made payable to Cassata Law, P.A., in the gross and net sum of $1,750.00, with no deductions or withholdings.

The payment set forth in Paragraph 2(a)(i) above will be reported by the Company for tax purposes on Form W-2 to be issued by the Company to Plaintiff and Plaintiff agrees and understands that all applicable taxes shall be withheld from that payment.  The payment set forth in Paragraph 2(a)(ii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff and the Plaintiff agrees and understands that no taxes shall be withheld from these payments.  The payment set forth in Paragraph 2(a)(iii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff's attorney (Plaintiff's attorney's tax ID number 27-1452649), and the Plaintiff and Plaintiff's attorney agree and understand that no taxes shall be withheld from these

MC

COMPOSITE EXHIBIT "B"

payments. The Plaintiff further represents, warrants, and acknowledges that the payment to Plaintiff's attorney set forth in Paragraph 2(a)(iii) above is entirely at his instigation and request both as to fact and amount, and for his convenience, and that the Company is not in any manner whatsoever involved in his request that such payments be so directed. The Plaintiff agrees and acknowledges that, between them, as allocated pursuant to applicable law, he will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and represents and warrants that such taxes will be timely and fully paid.

Neither the Company nor Plaintiff make any representations as to the taxability of the amounts paid by the Company to the Plaintiff. The Plaintiff agrees to pay the employee, but not the employer, federal or state taxes, if any, which are required by law to be paid with respect to the Settlement Amounts. Moreover, the Plaintiff agrees to indemnify the Company and hold it harmless from any interest, taxes or penalties assessed against them by any governmental agency as a result of the non-payment of employee, but not employer, taxes on any amounts paid to the Plaintiff or Plaintiff's attorney under the terms of this Agreement.

3.     Together with this Agreement, the attorneys for the Plaintiff – Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney") – will execute a Joint Motion to Review and Approve FLSA Settlement (the "Joint Motion") in the form attached hereto as Exhibit "A" with respect to the Arbitration, and forward it to the Defendants' attorneys as set forth in Paragraph 24(a) below. The Plaintiff and Defendants hereby authorize and instruct their respective attorneys to transmit the executed Joint Motion to the Arbitrator. The parties agree subsequently to take whatever other actions are necessary to effectuate the dismissal with prejudice of the District Court Action, including, but not limited to, filing a motion to confirm the Arbitrator's approval of this Agreement, as well as filing additional motions in the District Court Action should the Arbitrator disapprove or deny the Joint Motion attached hereto as Exhibit "A."

4.     The Plaintiff agrees and acknowledges that he shall not in the future provide any services to, or be employed by, the Company. The Plaintiff further agrees and acknowledges that he will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. In the event that the Plaintiff is inadvertently employed by any of the foregoing (including as an independent contractor), he will promptly notify the employing person or entity of his obligation to resign from such employment, and the employing entity shall have the right to require his resignation forthwith.

5.     The Plaintiff represents, warrants, and acknowledges that the Company does not owe him any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as specifically set forth in this Agreement. The Plaintiff further agrees and understands that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of

MC

COMPOSITE EXHIBIT "B"

settlement and that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

6.      The Plaintiff represents, warrants, and acknowledges that there are bona fide disputes between himself and the Company as to whether he is entitled to receive the Alleged Compensation Amount or any part thereof.  Notwithstanding that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof, the Plaintiff represents, warrants, and agrees that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts, including but not limited to alleged unpaid wages, alleged liquidated damages, alleged back wages, alleged compensatory damages, and costs and attorney's fees, to which the Plaintiff claims or may claim entitlement as against the Company, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.      The Plaintiff, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby releases and forever discharges the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and Burt Kroner, and his respective heirs, executors, administrators, successors, and assigns, and all persons acting by, through, under, or in concert with any of them (hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

(a)      any and all claims asserted, or which could have been asserted, in the District Court Action and/or Arbitration, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

(b)      any and all claims of wrongful termination or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all other claims of employment discrimination on any basis, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992, Fla. Stat. Chapter 760, as amended; the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil

MC

COMPOSITE EXHIBIT "B"

Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under 42 U.S.C. § 1981, under the Florida Equal Pay Law, as amended, Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07, the Florida Whistle Blower Act, Fla. Stat. § 448.101 et seq.; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; Florida Wage Discrimination Law, Fla. Stat. § 448.07; Florida AIDS Act, Fla. Stat. § 110.1125, § 381.00 and § 760.50; Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. § 448.075 et seq.; Florida OSHA, Fla. Stat. Ann. § 442.018(2); and under the Florida Wage Discrimination Law, as amended;

(c)      any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law;

(d)      any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)      any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against the Defendant Releasees, Plaintiff or his heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this Agreement.

Plaintiff agrees, acknowledges and confirms that he has not worked any additional hours for which he is eligible to receive any additional compensation not otherwise paid to him previously or pursuant to this Agreement.

Plaintiff agrees, acknowledges and confirms that he knows of no injuries suffered on the job for which he may have been eligible to make a claim for workers' compensation benefits and for which he has not previously submitted claims.

Plaintiff agrees, acknowledges and confirms that he knows of no conduct, or misconduct, on the part of the Company or any of its employees, which could or should have been reported to appropriate governmental agencies or otherwise.

This release does not include any and all claims which arise or may arise subsequent to the execution of this Agreement.

8.      The Plaintiff understands and acknowledges that there may be facts or information which he does not know or suspect to exist in his favor at the time he executes this Agreement, and he agrees that this Agreement is intended to and does extinguish any and all claims he might have based on such facts or information.

MC

COMPOSITE EXHIBIT "B"

9.    Excepting only the District Court Action and the Arbitration, the Plaintiff represents and warrants that he has never commenced or filed, and covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before his execution of this Agreement.

10.    The Plaintiff represents and warrants that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against him by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before his execution of this Agreement.  The Plaintiff further represents and warrants that he has not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, he will cooperate fully with the Defendant Releasees and will move immediately to withdraw his name and to disassociate himself completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.    The parties acknowledge that maintaining their respective good reputation in the community is of paramount importance.  Accordingly, the parties represent and warrant that they will not disparage or encourage or induce others to disparage one another, including any of the Defendant Releasees, by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise.  These proscriptions include, but are not necessarily limited to, communications that are in any way injurious to the reputation and interests of the Plaintiff or the Company or any of the Defendant Releasees, such as, without limitation, any negative or derogatory comments.

12.    Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraph 11 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Plaintiff, receipt whereof is hereby acknowledged, releases and forever discharges the Plaintiff and his respective heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the

MC

Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, which, against the Plaintiff, the Company or the Company's successors and assigns ever had, now have or hereafter can, will, or may have, by reason of any matter or cause whatsoever, from the beginning of the world to the date the Company executes this Agreement.

13.     No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

14.     In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

15.     This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida, without regard to choice of law principles.  Any action or proceeding relating to or arising out of this Agreement shall solely and exclusively be brought in the District Court or a state court of competent jurisdiction and venue shall solely and exclusively be in Palm Beach County, Florida.

16.     Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

17.     This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

18.     This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiff or any other person on the part of the Company or any of the other Defendant Releasees.  Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever.

Claimants have determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing.  Because Claimants have concerns about whether they could prevail at the final hearing, they are accepting the amount offered herein in order to avoid a potential adverse result and cost judgment.

MC

COMPOSITE EXHIBIT "B"

19.     The Plaintiff expressly represents, warrants, and acknowledges that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, he does not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20.     The Plaintiff represents and acknowledges that his signature hereon shows that he has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that his signature appearing hereon is genuine.

21.     Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that this Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce any applicable laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies.  Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that he may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that:

(a)     Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein, agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA;

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed;

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies.  Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to his execution of this Agreement) that he may have

MC

COMPOSITE EXHIBIT "B"

against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge;

(d)     This Agreement will not affect or be used to interfere with Plaintiff's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth herein;

(e)     For a period of seven (7) days following Plaintiff's execution of this Agreement, Plaintiff has the right to revoke this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 24(a) below;

(f)     Plaintiff and the Company further agree and acknowledge that this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff; and that in the event Plaintiff revokes this Agreement prior to said eighth (8th) day, this Agreement, and the promises contained in it, will automatically be deemed null and void;

(g)     Plaintiff's acceptance of the monies or other consideration paid by the Company at any time more than seven (7) days after Plaintiff has executed this Agreement, will constitute an admission by Plaintiff that he has not revoked this Agreement during the revocation period, and that this Agreement has become fully effective and enforceable;

(h)     The Company hereby advises and urges the Plaintiff in writing to consult with an attorney prior to executing this Agreement; and

(i)     Plaintiff represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Plaintiff's right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

22.     This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart. The parties agree and acknowledge that a photocopy, facsimile copy or scanned email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

23.     This Agreement shall not be admissible or discoverable in any court or

MC

administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

24.     Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)     If to the Company:

Daniel R. Levine, Esq.
Padula Bennardo Levine LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Telephone:  (561) 544-8900
Facsimile:    (561) 544-8999
E-Mail:        drl@pbl-law.com

(b)     If to the Plaintiff:

Dion Cassata, Esq.
Cassata Law, P.A.
Boca Crown Centre
7999 North Federal Highway, Suite 200
Boca Raton, Florida 33487
Telephone:  (954) 364-7803
E-Mail:       dion@cassatalaw.com

25.     **THE PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT HE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HIM; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HIS ATTORNEYS, DION CASSATA, ESQ., CASSATA LAW, P.A., AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HIS ATTORNEYS.**

[SIGNATURES APPEAR ON FOLLOWING PAGE]

MC

COMPOSITE EXHIBIT "B"

CLIENT FIRST SETTLEMENT FUNDING, LLC

By: _____

BURT KRONER, MEMBER

Dated: _____2/20/2018_____

MARC COHEN

_____

MARC COHEN

Dated: _____1/27/18_____

MC

COMPOSITE EXHIBIT "B"

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between Client First Settlement Funding, LLC ("Client First" or "the Company"), on the one hand, and Enrique Rodriguez (the "Plaintiff"), on the other hand.

WHEREAS:

A.    The Plaintiff previously was employed by Client First;

B.    On or about August 1, 2016, Plaintiff filed a lawsuit against the Company and Burt Kroner (sometimes collectively referred to as "Defendants") in the United States District Court, Southern District of Florida, styled *Allen Mogavero et al. v. Client First Settlement Funding, LLC, et al.*, Case No. 9:16-cv-81362-WPD (the "District Court Action");

C.    The Plaintiff claimed that he was entitled to but did not receive from Defendants certain compensation allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended ("the FLSA") (the "Alleged Compensation Amount");

D.    On or about October 4, 2016, the District Court entered its Order compelling arbitration and staying the proceedings in the Civil Action;

E.    On or about October 19, 2016, Plaintiff caused to be filed his demand for arbitration with the American Arbitration Association (the "Arbitration");

F.    On or about January 5, 2017, the Defendants caused to be filed their answer and affirmative defenses, denying each and every material allegation set forth in the District Court Action and Arbitration, and further denying having committed any wrong or causing any injury to the Plaintiff;

G.    For approximately one (1) year, the parties litigated the Plaintiff's claims in the Arbitration, including participating in discovery, consisting of written discovery and depositions;

H.    At all times material hereto, the Defendants vehemently disputed and denied all the Plaintiff's claims in the Civil Action and Arbitration and denied that the Plaintiff was entitled to receive the Alleged Compensation Amount or any part thereof;

I.    The final hearing in the Arbitration was scheduled to take place during the week of January 22, 2018;

J.    Because Plaintiff has concerns about whether he could prevail at the final hearing, Plaintiff has determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing and is accepting the amount offered herein in order

ER *ER*

COMPOSITE EXHIBIT "B"

to avoid a potential adverse result and cost judgment;

      K.     Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever;

      L.     Therefore, in order to avoid the further costs and burdens of trial, Defendants and Plaintiff now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action and Arbitration.

NOW, THEREFORE, Defendants and Plaintiff agree as follows:

1.     The foregoing recitals constitute part of this Agreement.

2.     In consideration of this Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid to the Plaintiff and his attorneys, Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney"), the total gross amount of Two Thousand Seven Hundred and Fifty Dollars and No Cents ($2,750.00) (the "Settlement Amount"). Plaintiff shall receive the total gross amount of $1,000.00, for Plaintiff's alleged unpaid wages and liquidated damages, and Plaintiff's attorney shall receive the total gross and net amount of $1,750.00 (for attorney's fees and costs and additional consideration for this Agreement).

      (a)     Within ten (10) days of the District Court's entry of an Order confirming the Arbitration, and conditioned upon the approval of this Agreement and dismissal of the District Court Action with prejudice, the Defendants shall cause to be delivered to Plaintiff's counsel's office:

      (i)     a payroll style check made payable to Plaintiff in the gross sum of $500.00, less applicable deductions and withholdings;

      (ii)     a non-payroll style check made payable to Plaintiff in the gross and net sum of $500.00; and

      (iii)     a non-payroll style check made payable to Cassata Law, P.A., in the gross and net sum of $1,750.00, with no deductions or withholdings.

The payment set forth in Paragraph 2(a)(i) above will be reported by the Company for tax purposes on Form W-2 to be issued by the Company to Plaintiff and Plaintiff agrees and understands that all applicable taxes shall be withheld from that payment. The payment set forth in Paragraph 2(a)(ii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff and the Plaintiff agrees and understands that no taxes shall be withheld from these payments. The payment set forth in Paragraph 2(a)(iii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff's attorney (Plaintiff's attorney's tax ID number 27-1452649), and the Plaintiff and Plaintiff's attorney agree and understand that no taxes shall be withheld from these

ER _an_

COMPOSITE EXHIBIT "B"

payments. The Plaintiff further represents, warrants, and acknowledges that the payment to Plaintiff's attorney set forth in Paragraph 2(a)(iii) above is entirely at his instigation and request both as to fact and amount, and for his convenience, and that the Company is not in any manner whatsoever involved in his request that such payments be so directed. The Plaintiff agrees and acknowledges that, between them, as allocated pursuant to applicable law, he will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and represents and warrants that such taxes will be timely and fully paid.

Neither the Company nor Plaintiff make any representations as to the taxability of the amounts paid by the Company to the Plaintiff. The Plaintiff agrees to pay the employee, but not the employer, federal or state taxes, if any, which are required by law to be paid with respect to the Settlement Amounts. Moreover, the Plaintiff agrees to indemnify the Company and hold it harmless from any interest, taxes or penalties assessed against them by any governmental agency as a result of the non-payment of employee, but not employer, taxes on any amounts paid to the Plaintiff or Plaintiff's attorney under the terms of this Agreement.

3.     Together with this Agreement, the attorneys for the Plaintiff – Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney") – will execute a Joint Motion to Review and Approve FLSA Settlement (the "Joint Motion") in the form attached hereto as Exhibit "A" with respect to the Arbitration, and forward it to the Defendants' attorneys as set forth in Paragraph 24(a) below. The Plaintiff and Defendants hereby authorize and instruct their respective attorneys to transmit the executed Joint Motion to the Arbitrator. The parties agree subsequently to take whatever other actions are necessary to effectuate the dismissal with prejudice of the District Court Action, including, but not limited to, filing a motion to confirm the Arbitrator's approval of this Agreement, as well as filing additional motions in the District Court Action should the Arbitrator disapprove or deny the Joint Motion attached hereto as Exhibit "A."

4.     The Plaintiff agrees and acknowledges that he shall not in the future provide any services to, or be employed by, the Company. The Plaintiff further agrees and acknowledges that he will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. In the event that the Plaintiff is inadvertently employed by any of the foregoing (including as an independent contractor), he will promptly notify the employing person or entity of his obligation to resign from such employment, and the employing entity shall have the right to require his resignation forthwith.

5.     The Plaintiff represents, warrants, and acknowledges that the Company does not owe him any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as specifically set forth in this Agreement. The Plaintiff further agrees and understands that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of

ER _CR_

COMPOSITE EXHIBIT "B"

settlement and that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

6.     The Plaintiff represents, warrants, and acknowledges that there are bona fide disputes between himself and the Company as to whether he is entitled to receive the Alleged Compensation Amount or any part thereof. Notwithstanding that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof, the Plaintiff represents, warrants, and agrees that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts, including but not limited to alleged unpaid wages, alleged liquidated damages, alleged back wages, alleged compensatory damages, and costs and attorney's fees, to which the Plaintiff claims or may claim entitlement as against the Company, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.     The Plaintiff, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby releases and forever discharges the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and Burt Kroner, and his respective heirs, executors, administrators, successors, and assigns, and all persons acting by, through, under, or in concert with any of them (hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

(a)     any and all claims asserted, or which could have been asserted, in the District Court Action and/or Arbitration, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

(b)     any and all claims of wrongful termination or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all other claims of employment discrimination on any basis, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992, Fla. Stat. Chapter 760, as amended; the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil

ER _ar_

Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under 42 U.S.C. § 1981, under the Florida Equal Pay Law, as amended, Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07, the Florida Whistle Blower Act, Fla. Stat. § 448.101 et seq.; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; Florida Wage Discrimination Law, Fla. Stat. § 448.07; Florida AIDS Act, Fla. Stat. § 110.1125, § 381.00 and § 760.50; Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. § 448.075 et seq.; Florida OSHA, Fla. Stat. Ann. § 442.018(2); and under the Florida Wage Discrimination Law, as amended;

(c)     any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law;

(d)     any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)     any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against the Defendant Releasees, Plaintiff or his heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this Agreement.

Plaintiff agrees, acknowledges and confirms that he has not worked any additional hours for which he is eligible to receive any additional compensation not otherwise paid to him previously or pursuant to this Agreement.

Plaintiff agrees, acknowledges and confirms that he knows of no injuries suffered on the job for which he may have been eligible to make a claim for workers' compensation benefits and for which he has not previously submitted claims.

Plaintiff agrees, acknowledges and confirms that he knows of no conduct, or misconduct, on the part of the Company or any of its employees, which could or should have been reported to appropriate governmental agencies or otherwise.

This release does not include any and all claims which arise or may arise subsequent to the execution of this Agreement.

8.     The Plaintiff understands and acknowledges that there may be facts or information which he does not know or suspect to exist in his favor at the time he executes this Agreement, and he agrees that this Agreement is intended to and does extinguish any and all claims he might have based on such facts or information.

ER

COMPOSITE EXHIBIT "B"

9.      Excepting only the District Court Action and the Arbitration, the Plaintiff represents and warrants that he has never commenced or filed, and covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before his execution of this Agreement.

10.     The Plaintiff represents and warrants that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against him by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before his execution of this Agreement. The Plaintiff further represents and warrants that he has not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, he will cooperate fully with the Defendant Releasees and will move immediately to withdraw his name and to disassociate himself completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.     The parties acknowledge that maintaining their respective good reputation in the community is of paramount importance.  Accordingly, the parties represent and warrant that they will not disparage or encourage or induce others to disparage one another, including any of the Defendant Releasees, by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise.  These proscriptions include, but are not necessarily limited to, communications that are in any way injurious to the reputation and interests of the Plaintiff or the Company or any of the Defendant Releasees, such as, without limitation, any negative or derogatory comments.

12.     Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraph 11 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Plaintiff, receipt whereof is hereby acknowledged, releases and forever discharges the Plaintiff and his respective heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the

ER _____

COMPOSITE EXHIBIT "B"

Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, which, against the Plaintiff, the Company or the Company's successors and assigns ever had, now have or hereafter can, will, or may have, by reason of any matter or cause whatsoever, from the beginning of the world to the date the Company executes this Agreement.

13.     No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

14.     In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

15.     This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida, without regard to choice of law principles. Any action or proceeding relating to or arising out of this Agreement shall solely and exclusively be brought in the District Court or a state court of competent jurisdiction and venue shall solely and exclusively be in Palm Beach County, Florida.

16.     Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

17.     This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

18.     This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiff or any other person on the part of the Company or any of the other Defendant Releasees.  Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever.

Claimants have determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing. Because Claimants have concerns about whether they could prevail at the final hearing, they are accepting the amount offered herein in order to avoid a potential adverse result and cost judgment.

ER _____

COMPOSITE EXHIBIT "B"

19.     The Plaintiff expressly represents, warrants, and acknowledges that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, he does not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20.     The Plaintiff represents and acknowledges that his signature hereon shows that he has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that his signature appearing hereon is genuine.

21.     Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that this Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce any applicable laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that he may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that:

(a)     Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein, agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA;

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed;

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff furthers agree that he knowingly and voluntarily waives all rights or claims (that arose prior to his execution of this Agreement) that he may have

ER _Col_

COMPOSITE EXHIBIT "B"

against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge;

(d)    This Agreement will not affect or be used to interfere with Plaintiff's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth herein;

(e)    For a period of seven (7) days following Plaintiff's execution of this Agreement, Plaintiff has the right to revoke this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 24(a) below;

(f)    Plaintiff and the Company further agree and acknowledge that this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff; and that in the event Plaintiff revokes this Agreement prior to said eighth (8th) day, this Agreement, and the promises contained in it, will automatically be deemed null and void;

(g)    Plaintiff's acceptance of the monies or other consideration paid by the Company at any time more than seven (7) days after Plaintiff has executed this Agreement, will constitute an admission by Plaintiff that he has not revoked this Agreement during the revocation period, and that this Agreement has become fully effective and enforceable;

(h)    The Company hereby advises and urges the Plaintiff in writing to consult with an attorney prior to executing this Agreement; and

(i)    Plaintiff represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Plaintiff's right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

22.    This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart.  The parties agree and acknowledge that a photocopy, facsimile copy or scanned email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

23.    This Agreement shall not be admissible or discoverable in any court or

ER _(initials)_

COMPOSITE EXHIBIT "B"

administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

24.   Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)   If to the Company:

Daniel R. Levine, Esq.
Padula Bennardo Levine LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Telephone:  (561) 544-8900
Facsimile:   (561) 544-8999
E-Mail:       drl@pbl-law.com

(b)   If to the Plaintiff:

Dion Cassata, Esq.
Cassata Law, P.A.
Boca Crown Centre
7999 North Federal Highway, Suite 200
Boca Raton, Florida 33487
Telephone:   (954) 364-7803
E-Mail:        dion@cassatalaw.com

25.   THE PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT HE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HIM; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HIS ATTORNEYS, DION CASSATA, ESQ., CASSATA LAW, P.A., AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HIS ATTORNEYS.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

ER _CA_

COMPOSITE EXHIBIT "B"

CLIENT FIRST SETTLEMENT FUNDING, LLC

By: _____
       BURT KRONER, MEMBER

Dated: _____2/20/2018_____


ENRIQUE RODRIGUEZ

_____
ENRIQUE RODRIGUEZ

Dated: _____1/30/2011_____

ER _____

COMPOSITE EXHIBIT "B"

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between Client First Settlement Funding, LLC ("Client First" or "the Company"), on the one hand, and Brenda Vance (the "Plaintiff"), on the other hand.

WHEREAS:

A.     The Plaintiff previously was employed by Client First;

B.     On or about August 1, 2016, Plaintiff filed a lawsuit against the Company and Burt Kroner (sometimes collectively referred to as "Defendants") in the United States District Court, Southern District of Florida, styled *Allen Mogavero et al. v. Client First Settlement Funding, LLC, et al.*, Case No. 9:16-cv-81362-WPD (the "District Court Action");

C.     The Plaintiff claimed that she was entitled to but did not receive from Defendants certain compensation allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended ("the FLSA") (the "Alleged Compensation Amount");

D.     On or about October 4, 2016, the District Court entered its Order compelling arbitration and staying the proceedings in the Civil Action;

E.     On or about October 19, 2016, Plaintiff caused to be filed her demand for arbitration with the American Arbitration Association (the "Arbitration");

F.     On or about January 5, 2017, the Defendants caused to be filed their answer and affirmative defenses, denying each and every material allegation set forth in the District Court Action and Arbitration, and further denying having committed any wrong or causing any injury to the Plaintiff;

G.     For approximately one (1) year, the parties litigated the Plaintiff's claims in the Arbitration, including participating in discovery, consisting of written discovery and depositions;

H.     At all times material hereto, the Defendants vehemently disputed and denied all the Plaintiff's claims in the Civil Action and Arbitration and denied that the Plaintiff was entitled to receive the Alleged Compensation Amount or any part thereof;

I.     The final hearing in the Arbitration was scheduled to take place during the week of January 22, 2018;

J.     Because Plaintiff has concerns about whether she could prevail at the final hearing, Plaintiff has determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing and is accepting the amount offered herein in order

BV

COMPOSITE EXHIBIT "B"

to avoid a potential adverse result and cost judgment;

    K.    Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever;

    L.    Therefore, in order to avoid the further costs and burdens of trial, Defendants and Plaintiff now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action and Arbitration.

NOW, THEREFORE, Defendants and Plaintiff agree as follows:

1.    The foregoing recitals constitute part of this Agreement.

2.    In consideration of this Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid to the Plaintiff and her attorneys, Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney"), the total gross amount of Two Thousand Two Hundred and Fifty Dollars and No Cents ($2,250.00) (the "Settlement Amount"). Plaintiff shall receive the total gross amount of $500.00, for Plaintiff's alleged unpaid wages and liquidated damages, and Plaintiff's attorney shall receive the total gross and net amount of $1,750.00 (for attorney's fees and costs and additional consideration for this Agreement).

(a)    Within ten (10) days of the District Court's entry of an Order confirming the Arbitration, and conditioned upon the approval of this Agreement and dismissal of the District Court Action with prejudice, the Defendants shall cause to be delivered to Plaintiff's counsel's office:

(i)    a payroll style check made payable to Plaintiff in the gross sum of $250.00, less applicable deductions and withholdings;

(ii)    a non-payroll style check made payable to Plaintiff in the gross and net sum of $250.00; and

(iii)    a non-payroll style check made payable to Cassata Law, P.A., in the gross and net sum of $1,750.00, with no deductions or withholdings.

The payment set forth in Paragraph 2(a)(i) above will be reported by the Company for tax purposes on Form W-2 to be issued by the Company to Plaintiff and Plaintiff agrees and understands that all applicable taxes shall be withheld from that payment. The payment set forth in Paragraph 2(a)(ii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff and the Plaintiff agrees and understands that no taxes shall be withheld from these payments. The payment set forth in Paragraph 2(a)(iii) above will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiff's attorney (Plaintiff's attorney's tax ID number 27-1452649), and the Plaintiff and Plaintiff's attorney agree and understand that no taxes shall be withheld from these

BV

COMPOSITE EXHIBIT "B"

payments. The Plaintiff further represents, warrants, and acknowledges that the payment to Plaintiff's attorney set forth in Paragraph 2(a)(iii) above is entirely at her instigation and request both as to fact and amount, and for her convenience, and that the Company is not in any manner whatsoever involved in her request that such payments be so directed. The Plaintiff agrees and acknowledges that, between them, as allocated pursuant to applicable law, she will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and represents and warrants that such taxes will be timely and fully paid.

Neither the Company nor Plaintiff make any representations as to the taxability of the amounts paid by the Company to the Plaintiff. The Plaintiff agrees to pay the employee, but not the employer, federal or state taxes, if any, which are required by law to be paid with respect to the Settlement Amounts. Moreover, the Plaintiff agrees to indemnify the Company and hold it harmless from any interest, taxes or penalties assessed against them by any governmental agency as a result of the non-payment of employee, but not employer, taxes on any amounts paid to the Plaintiff or Plaintiff's attorney under the terms of this Agreement.

3.     Together with this Agreement, the attorneys for the Plaintiff – Dion Cassata, Esq., Cassata Law, P.A. ("Plaintiff's attorney") – will execute a Joint Motion to Review and Approve FLSA Settlement (the "Joint Motion") in the form attached hereto as Exhibit "A" with respect to the Arbitration, and forward it to the Defendants' attorneys as set forth in Paragraph 24(a) below. The Plaintiff and Defendants hereby authorize and instruct their respective attorneys to transmit the executed Joint Motion to the Arbitrator. The parties agree subsequently to take whatever other actions are necessary to effectuate the dismissal with prejudice of the District Court Action, including, but not limited to, filing a motion to confirm the Arbitrator's approval of this Agreement, as well as filing additional motions in the District Court Action should the Arbitrator disapprove or deny the Joint Motion attached hereto as Exhibit "A."

4.     The Plaintiff agrees and acknowledges that she shall not in the future provide any services to, or be employed by, the Company. The Plaintiff further agrees and acknowledges that she will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. In the event that the Plaintiff is inadvertently employed by any of the foregoing (including as an independent contractor), she will promptly notify the employing person or entity of her obligation to resign from such employment, and the employing entity shall have the right to require her resignation forthwith.

5.     The Plaintiff represents, warrants, and acknowledges that the Company does not owe her any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as specifically set forth in this Agreement. The Plaintiff further agrees and understands that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of

BV 

settlement and that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof.

6.      The Plaintiff represents, warrants, and acknowledges that there are bona fide disputes between herself and the Company as to whether she is entitled to receive the Alleged Compensation Amount or any part thereof. Notwithstanding that the Company expressly denies that the Plaintiff is entitled to receive the Alleged Compensation Amount or any part thereof, the Plaintiff represents, warrants, and agrees that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts, including but not limited to alleged unpaid wages, alleged liquidated damages, alleged back wages, alleged compensatory damages, and costs and attorney's fees, to which the Plaintiff claims or may claim entitlement as against the Company, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.      The Plaintiff, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby releases and forever discharges the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and Burt Kroner, and his respective heirs, executors, administrators, successors, and assigns, and all persons acting by, through, under, or in concert with any of them (hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

(a)      any and all claims asserted, or which could have been asserted, in the District Court Action and/or Arbitration, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

(b)      any and all claims of wrongful termination or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all other claims of employment discrimination on any basis, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992, Fla. Stat. Chapter 760, as amended; the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil

BV

COMPOSITE EXHIBIT "B"

Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under 42 U.S.C. § 1981, under the Florida Equal Pay Law, as amended, Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07, the Florida Whistle Blower Act, Fla. Stat. § 448.101 et seq.; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; Florida Wage Discrimination Law, Fla. Stat. § 448.07; Florida AIDS Act, Fla. Stat. § 110.1125, § 381.00 and § 760.50; Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. § 448.075 et seq.; Florida OSHA, Fla. Stat. Ann. § 442.018(2); and under the Florida Wage Discrimination Law, as amended;

(c)    any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law;

(d)    any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)    any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against the Defendant Releasees, Plaintiff or her heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this Agreement.

Plaintiff agrees, acknowledges and confirms that she has not worked any additional hours for which she is eligible to receive any additional compensation not otherwise paid to her previously or pursuant to this Agreement.

Plaintiff agrees, acknowledges and confirms that she knows of no injuries suffered on the job for which she may have been eligible to make a claim for workers' compensation benefits and for which she has not previously submitted claims.

Plaintiff agrees, acknowledges and confirms that she knows of no conduct, or misconduct, on the part of the Company or any of its employees, which could or should have been reported to appropriate governmental agencies or otherwise.

This release does not include any and all claims which arise or may arise subsequent to the execution of this Agreement.

8.    The Plaintiff understands and acknowledges that there may be facts or information which she does not know or suspect to exist in her favor at the time she executes this Agreement, and she agrees that this Agreement is intended to and does extinguish any and all claims she might have based on such facts or information.

BV

COMPOSITE EXHIBIT "B"

9.     Excepting only the District Court Action and the Arbitration, the Plaintiff represents and warrants that she has never commenced or filed, and covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before her execution of this Agreement.

10.    The Plaintiff represents and warrants that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against her by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before her execution of this Agreement. The Plaintiff further represents and warrants that she has not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, she will cooperate fully with the Defendant Releasees and will move immediately to withdraw her name and to disassociate herself completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.    The parties acknowledge that maintaining their respective good reputation in the community is of paramount importance.  Accordingly, the parties represent and warrant that they will not disparage or encourage or induce others to disparage one another, including any of the Defendant Releasees, by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise.  These proscriptions include, but are not necessarily limited to, communications that are in any way injurious to the reputation and interests of the Plaintiff or the Company or any of the Defendant Releasees, such as, without limitation, any negative or derogatory comments.

12.    Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraph 11 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Plaintiff, receipt whereof is hereby acknowledged, releases and forever discharges the Plaintiff and her respective heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, whether known or unknown, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the

BV

COMPOSITE EXHIBIT "B"

Plaintiff's relationship with the Company, any agreement concerning such relationship, or the termination of such relationship, which, against the Plaintiff, the Company or the Company's successors and assigns ever had, now have or hereafter can, will, or may have, by reason of any matter or cause whatsoever, from the beginning of the world to the date the Company executes this Agreement.

13.    No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

14.    In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, her or its attorneys' fees and expenses.

15.    This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida, without regard to choice of law principles. Any action or proceeding relating to or arising out of this Agreement shall solely and exclusively be brought in the District Court or a state court of competent jurisdiction and venue shall solely and exclusively be in Palm Beach County, Florida.

16.    Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

17.    This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

18.    This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiff or any other person on the part of the Company or any of the other Defendant Releasees.  Defendants have determined to resolve this case purely for business reasons and admit no liability or wrongdoing whatsoever.

Claimants have determined to resolve this case in order to avoid the expense and uncertainty of a final arbitration hearing. Because Claimants have concerns about whether they could prevail at the final hearing, they are accepting the amount offered herein in order to avoid a potential adverse result and cost judgment.

BY 

COMPOSITE EXHIBIT "B"

19.     The Plaintiff expressly represents, warrants, and acknowledges that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, she does not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

20.     The Plaintiff represents and acknowledges that her signature hereon shows that she has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that her signature appearing hereon is genuine.

21.     Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that this Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce any applicable laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff furthers agree that she knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that she may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

Notwithstanding any other provision of this Agreement to the contrary, the Company and the Plaintiff agree that:

(a)     Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein, agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims she may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA;

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed;

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff furthers agree that she knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) that she may have

BV

COMPOSITE EXHIBIT "B"

against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge;

(d)     This Agreement will not affect or be used to interfere with Plaintiff's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth herein;

(e)     For a period of seven (7) days following Plaintiff's execution of this Agreement, Plaintiff has the right to revoke this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 24(a) below;

(f)     Plaintiff and the Company further agree and acknowledge that this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff; and that in the event Plaintiff revokes this Agreement prior to said eighth (8th) day, this Agreement, and the promises contained in it, will automatically be deemed null and void;

(g)     Plaintiff's acceptance of the monies or other consideration paid by the Company at any time more than seven (7) days after Plaintiff has executed this Agreement, will constitute an admission by Plaintiff that she has not revoked this Agreement during the revocation period, and that this Agreement has become fully effective and enforceable;

(h)     The Company hereby advises and urges the Plaintiff in writing to consult with an attorney prior to executing this Agreement; and

(i)     Plaintiff represents, warrants and acknowledges that the Company gave her a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of Plaintiff's right to consider this Agreement for twenty-one (21) days, and was due to her belief that she had ample time in which to consider and understand this Agreement, and to review it with an attorney.

22.     This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart. The parties agree and acknowledge that a photocopy, facsimile copy or scanned email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

23.     This Agreement shall not be admissible or discoverable in any court or

BV

COMPOSITE EXHIBIT "B"

administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

24.    Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)    If to the Company:

Daniel R. Levine, Esq.
Padula Bennardo Levine LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Telephone:  (561) 544-8900
Facsimile:    (561) 544-8999
E-Mail:        drl@pbl-law.com

(b)    If to the Plaintiff:

Dion Cassata, Esq.
Cassata Law, P.A.
Boca Crown Centre
7999 North Federal Highway, Suite 200
Boca Raton, Florida 33487
Telephone:  (954) 364-7803
E-Mail:        dion@cassatalaw.com

25.    THE PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT SHE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HER; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HER ATTORNEYS, DION CASSATA, ESQ., CASSATA LAW, P.A., AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HER ATTORNEYS.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

BV 

COMPOSITE EXHIBIT "B"

CLIENT FIRST SETTLEMENT FUNDING, LLC

By: _____
           BURT KRONER, MEMBER

Dated: _____

BRENDA VANCE

_____
BRENDA VANCE

Dated: ___1/24/18___

BV _BV_

QUINT FUNDING SETTLEMENT FUNDING, LLC

BY: _____
BURT KRONER / MEMBER

Dated: _____

BRENDA VANCE

_____
BRENDA VANCE

Dated: _____

BV

COMPOSITE EXHIBIT "B"